**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KATHERINE N. PAYNE AND ARTHUR COATES,** | **CIVIL ACTION** |
| **Plaintiffs,** | |
| **v.** | |
| | **NO. 18-4009** |
| **MARRIOTT EMPLOYEES FEDERAL CREDIT UNION,** | |
| **Defendant.** | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Katherine N. Payne and Arthur Coates bring a putative class action against Marriott Employees Federal Credit Union ("MEFCU"), arguing that MEFCU's practices related to a "mini-loan" product violate the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* Specifically, Plaintiffs allege (1) that MEFCU's financial disclosures to Plaintiffs understated the "finance charge" and "annual percentage rate" on mini-loans in violation of 15 U.S.C. §§ 1605, 1638, and (2) that MEFCU failed to disclose that it would acquire a security interest in the share accounts or wages of employees who received mini-loans in violation of 15 U.S.C. § 1638(a)(9) and 12 C.F.R. § 1206.18(m). Pending now is MEFCU's motion to dismiss, which primarily argues that its disclosures complied with TILA. The motion to dismiss also argues, in the alternative, that even if the disclosures were inadequate, Plaintiffs are not entitled to actual damages. For the reasons that follow, the motion will be granted in part and denied in part.

### I.     Facts[1]

Plaintiffs have both been members of MEFCU for many years. Over the course of their membership, Plaintiffs have applied for various "mini-loans" from MEFCU.

Mini-loans are a financial product that provide MEFCU members quick access to $500.

---

[1] These facts are drawn from the Complaint and, for purposes of a motion to dismiss, taken as true. *Quinones v. United States*, 492 F.2d 1269, 1271 (3d Cir. 1974).

In exchange, members must make five monthly payments of $90, and a final payment of $79.23, for a total of $529.23.  Additionally, MEFCU members must pay a $35 "application fee" each time they apply for a new mini-loan.

These figures are critical to key calculations that feature on MEFCU's disclosures that it provides to applicants for mini-loans:  the "finance charge" and the "annual percentage rate" (APR).  The finance charge is the "cost of consumer credit as a dollar amount," 12 C.F.R. § 226.4(a), which MEFCU calculates as $29.23.  The APR is the "cost of . . . credit as a yearly rate," 12 C.F.R. § 1026.18(e), which MEFCU calculates as 18%.

These calculations as disclosed by MEFCU, however, do not include the $35 application fee—Plaintiffs contend that were the application fee included, the finance charge would rise to $64.23, and the APR would rise to 46%.  As discussed in more detail below, a key legal question at issue in this motion to dismiss turns on the nature of the application fee.  Plaintiffs assert two important facts about the fee in their Complaint: (1) Various members of MEFCU who have applied for mini-loans report that the application fee is only charged if their applications are approved; and (2) MEFCU grants mini-loans to applicants without performing credit checks, credit investigations, or appraisals.

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice.

*Id.* at 683.  Instead, a plaintiff must allege some facts to raise the allegation above the level of mere speculation.  *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 542 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 545).  In determining whether a complaint satisfies this standard, a court must first outline the required elements, then "peel away . . . allegations that are no more than [legal] conclusions and thus not entitled to the assumption of truth," and finally decide whether the well-pled factual allegations—taken as true—entitle the plaintiff to relief.  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

### III.    Discussion

#### A.  Application Fees as Finance Charges under TILA

TILA requires creditors to provide consumers with "meaningful disclosure of credit terms," 15 U.S.C. § 1601(a); *see also Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 198 (2011), the details of which are defined by the Act and by its implementing regulation, known as Regulation Z.  Issuers of credit "must not only disclose the required terms, [they] must do so accurately."  *Rossman v. Fleet Bank (R.I.) Nat'l Ass'n.*, 280 F.3d 384, 390-91 (3d Cir. 2002).  The statutory framework requires MEFCU to make disclosures to mini-loan applicants regarding the "finance charge" and the "APR."  15 U.S.C. § 1638(a)(3), (4); *see also Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).  Plaintiffs assert that MEFCU's disclosure of these two terms was inaccurate.

The finance charge is "the sum of all charges[] payable . . . by the person to whom the credit is extended, and imposed . . . by the creditor as an incident to the extension of credit," 15 U.S.C. § 1605(a), and the APR is "the cost of . . . credit as a yearly rate," 12 C.F.R. § 1026.18(e).  The APR is calculated based on the finance charge (thus, if the finance charge is inaccurate, the APR will necessarily be inaccurate as well).  *Id.*  Critically, Regulation Z makes clear that

application fees "are not finance charges." 12 C.F.R. § 226.4(c). MEFCU calculated the finance charge and APR without taking into account the $35 "application fee"; Plaintiffs argue that this calculation was inaccurate because the $35 fee that MEFCU describes as an "application fee" is not, in fact, an application fee. Therefore, according to Plaintiffs, the $35 fee should have been included in the finance charge and APR calculations, and by failing to do so MEFCU violated TILA.

Regulation Z defines an application fee as a fee that is charged to "all applicants," regardless of whether their applications are ultimately accepted. *Jefferies v. Ameriquest Mortg. Co.*, 543 F. Supp.2d 368, 379 n.13 (E.D. Pa. 2008) (citing 12 C.F.R. § 226.4(c)(1)). The Federal Reserve's Official Staff Interpretation further explains that "[a]n application fee that is excluded from the finance charge is a charge to recover the costs associated with processing applications for credit[,]" and that "[t]he fee may cover the costs of services such as credit reports, credit investigations, and appraisals." Truth in Lending; Official Staff Commentary, 46 Fed. Reg. 50288-01, 50300 (Oct. 9, 1981); *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980) ("Unless demonstrably irrational, Federal Reserve Board staff opinions construing the [Truth in Lending] Act or Regulation [Z] should be dispositive[.]").

MEFCU's contends that "the Complaint . . . fails to allege any facts from which this Court could conclude that any applicant was not charged an application fee by MEFCU," *i.e.*, that all applicants were charged the $35 fee, and therefore that the fee was an "application fee." But, contrary to MEFCU's assertions, Plaintiffs allege various facts that, taken as true, create the reasonable inference that the $35 fee is not an application fee—both because the fee is not charged to employees whose loan applications are rejected, and because the fee is not connected to the costs of processing applications for credit.

As to whether the fee is being charged to "all applicants," *Jefferies*, 543 F. Supp.2d at 379 n.13, Plaintiffs assert that Marriott employees "who have utilized the MEFCU mini-loan"—though apparently not Plaintiffs themselves—"have repeatedly taken out mini-loans throughout their entire employment . . . and the 'application fee' has only been charged to them when their mini-loans were approved." Complaint ¶ 28. Thus, the fee is not being charged to "all applicants," but rather only to accepted applicants.[2] And as to whether the charge is a bona fide application fee related to the processing of applications, Plaintiffs assert that the $35 fee is charged "[e]ven when the borrowers have previously applied for a mini-loan with MEFCU or paid off multiple prior mini-loans to MEFCU," Complaint ¶ 22; that Marriott employees "who have utilized the MEFCU mini-loan . . . report their credit has never been pulled by MEFCU and no one from MEFCU has ever contacted them to investigate any parts of their application," *id.* ¶ 28; that when Plaintiffs applied for mini-loans in late 2017, MEFCU "did not perform any credit check or investigation into [their] applications[], did not make any inquiries of [them] related to the application[s], and did not conduct any appraisal of [their] property related to the mini-loan application," *id.* ¶¶ 46, 56; and that the lack of investigation was consistent with Plaintiffs' experiences in applying for mini-loans in years past, *id.* Thus, they assert that the fee is not being used "to recover the costs associated with processing applications for credit." Truth in Lending; Official Staff Commentary, 46 Fed. Reg. 50288-01, 50300 (Oct. 9, 1981).

These allegations give rise to the reasonable inference that the $35 fee was not charged to all applicants and that it was not related to costs associated with processing applications. Therefore, MEFCU's argument must be rejected.

---

[2] While it is possible to read the Complaint differently—interpreting the word "when" as addressing the timing of the fee charge rather than whether the fee was charged at all—that reading is impermissible at this stage in the litigation where "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987).

### B.  Security Interests Disclosed

TILA and Regulation Z also require disclosure of any security interest taken by a creditor.  15 U.S.C. § 1638(a)(9); 12 C.F.R. 1026.18(m).  The disclosure must be "clear[] and conspicuous[]."  12 C.F.R. 1026.17(a)(1).  MEFCU attaches to its motion to dismiss both Plaintiffs' "Mini-Loan Applications" ("Applications") and "Loan Agreement and Consumer Credit Disclosure Statements" ("Agreements") arguing that these documents show that it adequately disclosed the security interests it would acquire.[3]

The Applications each state: "I pledge and grant the Credit Union a security interest in my shares with the Credit Union or shares hereafter acquired to secure this loan and any other amount I owe the Credit Union, now or in the future.  I further agree that the Credit Union may apply those shareholdings to pay any amount due in the event of default."

The Agreements are less clear.  Each contains two sections relevant here.  The first, higher on the page, is titled "Security" and contains the statement "You are giving a security interest in:" followed by several boxes labeled "the goods or property being purchased," "savings and/or deposits in this credit union," and "other."  None of these boxes are checked on either Plaintiffs' Agreements.

The second section in the Agreements, lower on the page, is titled "Note and Security Agreement and Pledge of Savings (Shares)".  It then says "Security Offered:" and underneath that phrase, the words "S8 ACCOUNT" and "Paid shares in the amount of one month's loan payment plus $5.00 are pledged to secure this loan and are not available for withdrawal."

MEFCU focuses on the fact that it disclosed that it would take a security interest both in

---

[3] Although on a motion to dismiss it is generally improper to consider extraneous documents, the Court may nonetheless consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

the Application and in the bottom portion of the Agreements. But MEFCU ignores the failure to check any of the boxes in the top portion of the Agreements titled "Security," including a failure to check the box labeled "savings and/or deposits in this credit union." At least at this stage of the proceedings, it is entirely unclear from the documents provided to Plaintiffs what security interest MEFCU would obtain by making the loan. This is not a "clear" disclosure as required by Regulation Z, and therefore MEFCU's motion to dismiss on this point will be denied. *See Lifanda v. Elmhurst Dodge, Inc.*, 237 F.3d 803, 807-08 (7th Cir. 2001).

### C. Actual Damages

To recover actual damages under TILA, Plaintiffs must plead detrimental reliance. *Vallies v. Sky Bank*, 591 F.3d 152, 153 (3d Cir. 2009). MEFCU argues that Plaintiffs failed to do so.

MEFCU points to *Vallies*, contending that it requires a plaintiff seeking actual damages to satisfy a four-part test by showing: "(1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure statement been accurate, he would have sought a lower price; and (4) he would have obtained a lower price." *Id.* at 155 (quoting the district court below). Contrary to MEFCU's representations, however, the Third Circuit did not hold in *Vallies* that a plaintiff must satisfy this test in order to plead detrimental reliance. Rather, it held that "[n]o doubt a plaintiff who can satisfy the [four-part test to which MEFCU refers] will successfully establish detrimental reliance." 591 F.3d at 164 n.19. But immediately after this holding, the panel went on to identify another potential test—a test that requires only that plaintiffs "establish that they would have foregone the loan completely had they received and reviewed an accurate disclosure," *id.*—and indicated that satisfying that test may also be sufficient to show detrimental reliance. Thus, satisfying the four-part test on which MEFCU

bases its argumentation is a sufficient but not necessary condition for showing detrimental reliance.

Plaintiffs' position, on the other hand, is less clear. They appear to advocate either for a rule that would essentially assume detrimental reliance where any inaccurate disclosures had been made, *see* ECF No. 14 at 27 ("[H]ere, the detrimental reliance arises from the inaccurate disclosures."), or for a rule that "reliance may be shown by payments," *id.* at 28. As to the first potential rule, Plaintiffs cite no law to support this proposition, and in any case such a rule would in practice write out the detrimental reliance requirement that the Third Circuit has made clear is—in one way or another—a part of the analysis. As to the second potential rule, Plaintiffs' only support is a Bankruptcy Court opinion that only mentions reliance in passing. *See In re Faulkner*, 593 B.R. 263, 298-99 (Bankr. E.D. Pa. 2018).

While the Third Circuit has not defined a set of necessary elements for detrimental reliance in the TILA context, both a ceiling and a floor for those elements is apparent. The *Vallies* panel made clear that the four-part test discussed in that case constitutes a ceiling—if a plaintiff can satisfy that test, the plaintiff has shown detrimental reliance. And the floor certainly cannot be any lower that showing detrimental reliance at common law. That is, the borrower must have reasonably relied on the creditor's representation, and based on that representation the borrower must have taken an action to his or her detriment that should have been reasonably foreseeable to the creditor. *See, e.g.*, *C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988). Nevertheless, the contours of actions made in reliance on inadequate disclosures that could give rise to a showing of detrimental reliance under TILA remain unclear; while the Third Circuit has identified certain specific actions in *Vallies* (*e.g.*, successfully negotiating a better deal or foregoing the loan entirely), nothing precludes additional actions not

noted in that case from establishing detrimental reliance, such as arranging one's finances differently, taking out fewer loans, or some other reasonable action in response to a creditor's misrepresentation.

In any event, Plaintiffs have not pleaded any facts that would meet this floor. Therefore, MEFCU's motion must be granted as to actual damages and the Court need not determine the required elements for detrimental reliance in the TILA context. The dismissal of the claim for actual damages will be without prejudice.

An appropriate order follows.

January 9, 2019                                          BY THE COURT:

                                                        /s/Wendy Beetlestone, J.

                                                        _____
                                                        WENDY BEETLESTONE, J.