UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KATHERINE PAYNE**<br>**ARTHUR COATES**<br>    *Plaintiffs, individually and on behalf*<br>    *of other similarly situated persons*<br>v.<br><br>**MARRIOTT EMPLOYEES FEDERAL**<br>**CREDIT UNION**<br>    *Defendant* | CIVIL ACTION<br>NO. 2:18-CV-04009-WB |

**JOINT MOTION TO AMEND THE COURT'S PRIOR ORDER CERTIFYING THE CLASS AND GRANT PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND SUPPORTING MEMORANDUM OF LAW**

Plaintiffs, Katherine Payne and Arthur Coates (the "Named Plaintiffs" in this Class Action), and Defendant Marriott Employees Federal Credit Union ("MEFCU" or "Defendant") (jointly referred to as the "Parties"), through counsel and pursuant to Fed. R. Civ. P. 23, move this Court to: (i) amend its prior Order certifying the Class (ECF. 36) and (ii) to grant preliminary certification and approval of the proposed class action settlement in this matter. The Parties respectfully say:

**I. INTRODUCTION**

1. On September 18, 2018, Named Plaintiffs filed the above-captioned class action lawsuit asserting class claims against Defendant under the Truth in Lending Act, 15 U.S.C.A. § 1601 *et seq.* ("TILA") alleging that Defendant MEFCU violated TILA by failing to make certain disclosures required by TILA and its implementing regulations in relation to its "mini-loan" product.  Specifically, Named Plaintiffs claim they and the Class members were improperly

    a. Charged a $35 application fee that should have been disclosed as a finance charge which rendered the disclosures provided inaccurate – the true annual percentage rate of the loan exceeded 45% but the disclosure provided stated the APR was 18%; and

    b. The TILA disclosures provided by MEFCU did not properly give notice of the security interests claimed by the Defendant in their deposit accounts and wages from their employer.

2. MEFCU moved to dismiss Plaintiffs' claims to which the Court granted the motion in part and denied it in part. *See e.g. Payne v. Marriott Employees Fed. Credit Union*, No. CV 18-4009, 2019 WL 161732 (E.D. Pa. Jan. 9, 2019).

3. After the Parties' initial discovery, Named Plaintiffs moved to certify a class of similar persons which was granted by the Court. ECF. 36.

4. Following the remaining discovery, the Parties cross moved for summary judgment. *See e.g.* ECF. 43 & 44 (and related responses, relies, and other motions).

5. During discovery and following the motions practice (but before the Court made any rulings on the dispositive questions), the Parties also participated in two formal arms-length negotiations in settlement conferences before United States Magistrate Judge Richard A. Lloret and multiple informal communications between counsel for the Parties and Judge Lloret. As a result of these communications, the Parties entered into a Class Action Settlement Agreement (hereinafter referred to as the "Agreement"), attached hereto as **Exhibit 1**.

6. Pursuant to Fed. R. Civ. P. 23(e), the Parties now seek preliminary certification and approval of the Agreement which will resolve this Lawsuit pending before this Court.

Specifically, the Parties request the Court amend its prior Order certifying the Class (ECF. 36) to provide for preliminarily approval of a Settlement Class pursuant to the proposed Agreement by entering the Order of Preliminary Approval of Class Action Settlement (hereinafter referred to as the "Preliminary Approval Order") attached hereto as **Exhibit 2**.[1]  The Court would also retain jurisdiction to conduct a Final Fairness Hearing in approximately 90 days after the proposed class receives notice and has a reasonable opportunity to decide what actions, if any, they wish to take.

**II. SUPPORTING MEMORANDUM OF LAW**

The Parties submit the following memorandum in support of their motion for preliminary certification and approval of class action settlement agreement.

**A. PROPOSED SETTLEMENT**

As stated above, the Agreement is attached hereto as **Exhibit 1**. The Court has previously certified the Class whose claims are proposed to be settled pursuant to Fed. R. Civ. P. 23(b)(3) and appointed the Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel. ECF. 36.  The Parties incorporate the basis for those prior rulings from the papers and discovery already relied upon by the Court.  *See e.g.* ECF. 29 & 33 (including related attachments and papers).

The remaining significant terms of the proposed settlement are set forth in the following sub-paragraphs.

**1. Notice to Class Members per Fed. R. Civ. P. 23.**

Pursuant to Fed. R. Civ. P. 23(c)(2), Plaintiff proposes and the Defendant agrees that the Notice attached hereto as **Exhibit 3** shall be sent to each Class Member. *See*, *e.g.*, *Wetzel v.*

---

[1] If the Settlement is not concluded, the parties agreed that they will request the Court order the order amending the prior order be vacated. Settlement Agreement, ¶ 35.a.(ii).

*Liberty Mut. Ins. Co.*, 508 F.2d 239, 254 (3d Cir. 1975) ("By its terms, the mandatory notice requirement of (c)(2) applies only to actions maintained under (b)(3)."). The proposed settlement, therefore, provides for notice to the Class Members to be sent to each Class Member within approximately thirty (30) days of the Court's Preliminary approval of the Settlement Agreement. Ex. 1, Agreement, at ¶¶ 35-36.  Notice to the Class shall be made by the Settlement Administrator acting under the Parties' supervision.  *Id.*

### 2. Exclusions and Objections.

In compliance with Fed. R. Civ. P. 23(b)(3), the Class Members will be permitted to exclude themselves from the class. Ex. 1, at ¶ 38. Any Class Member who intends to object to the fairness of the settlement must file a written objection with the Court no later than sixty (60) days after notice is sent. Ex. 1, at ¶ 37.  Further, any such Class Member must, within sixty (60) days after notice is sent, provide a copy of the written objection to Class Counsel and counsel for Defendants. *Id*. In the written objection, the Class Member must state: his or her full name, address, telephone number and email address (if available); the reasons for his or her objection; and, whether he or she intends to appear at the Fairness Hearing on his or her own behalf or through counsel. *Id*.

Any Class Member who does not file a valid and timely objection to the settlement shall be barred from seeking review of the settlement by appeal or otherwise. *Id*.

### 3. Settlement Consideration.

As explained above, the proposed settlement class is a Rule 23(b)(3) settlement class, and, therefore, the settlement consideration is as described in Ex. 1, Agreement, at ¶¶ 28 and 33.

### 4. Relief to the class.

The Class Members will receive the benefit of the following:

- The Defendant will pay a sum of $215,000.00 to a Common Fund to be distributed to Class Members, on a pro-rata basis, less (i) attorney's fees, incentive fees, and costs that may be approved by the Court; and, (ii) any costs associated with providing notice to all Class members or administering the settlement.

*See Id.* at ¶ 28.

### 5. Class Representative Incentive Payments and Settlements.

The Plaintiffs will seek a Court awarded incentive payment for their service to the Class in this action by participating in discovery, attending a mediation session under the Court's supervision, maintaining contact with Class Counsel, and being prepared to attend and participate in any Court proceedings. *See Id.* at ¶¶ 25, 28(b)(ii). These sums would be paid from the common fund established by the Agreement. *Id*.

### 6. Attorneys' Fees, (Non-Notice) Costs, and Expenses.

Pursuant to the Agreement, Class Counsel shall be entitled to petition the Court for an award of reasonable attorney's fees and costs to Class Counsel, related to this action, including reasonable time spent handling communications from Class Members. *Id.* at ¶ 29.

### 7. Class Action Fairness Act.

In compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, within 10 days of filing the Agreement with the Court, Defendant will send any notice of the proposed settlement as required by the Act.

## B. THE SETTLEMENT SATISFIES THE REQUIREMENTS OF RULE 23

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Id.* "For in such cases, 'the class action device

5

saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'" *Id*. (changes in original).

Courts have recognized "there is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, *10 (E.D. Va. 2009)*; see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (recognizing "the federal policy of encouraging class action settlement agreements"). "There is a [also] 'strong presumption in favor of finding a settlement fair';" nevertheless, a proposed settlement must satisfy the requirements of Rule 23. *Id.*; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). "Fed. R. Civ. P. 23 enumerates the requirements for certification of a class action. The Court may certify a class only if it satisfies all the prerequisites of Rule 23(a), and the requirements of at least one subdivision of Rule 23(b)." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 496 (D. MD. 1998). The Court has already held that these requirements have been met.

Fed. R. Civ. P. 23(e) provides a class action shall be "compromised only with the court's approval." *Id.* "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." In re *Jiffy Lube Securities Litigation*, 927 F.2d 155, 158 (4th Cir. 1991). "When a settlement agreement has been the subject of arms-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement." *Houston v. URS Corp.*, 2009 WL 2474055 (E.D. Va. 2009).

However, "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Parties believe that the factors established in the cases of *In re: Prudential Insurance Co. America Sales Practice Litig.*, 148 F.3d 283, 311 (3d Cir. 1998) and *In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) for approval of a class settlement apply to this proposed settlement and are prepared to argue those factors at the final fairness hearing. But for Plaintiffs initiating this action and pursuing it to this stage, the putative Class Members, would likely not have known that they had rights under the Truth in Lending Act to protect their interests. Here the parties reached this agreement after two mediation sessions and multiple arms-length settlement communications by counsel. In sum, the Parties negotiated the proposed settlement at arms-length after careful and extended consideration of the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses.

The proposed settlement was not the product of fraud or collusion. The Parties have been represented by counsel experienced in consumer and class litigation. Class Counsel are "seasoned attorneys" and have determined this settlement is in the Class Members' best interest. Class Counsels' qualifications were previously provided to the Court (*see* ECF. 29-3 at Apx. 41-57). Counsel for the Defendant also has a practice in similar litigation and substantial experience with the issues raised by the Plaintiff's claims and allegations.

### A. THE PROPOSED SETTLEMENT SATISFIES THE ADEQUACY FACTORS.

> In class actions, settlement agreements cannot be approved unless the court determines that they are "fundamentally fair, reasonable, and adequate," the purpose of which is to "protect unnamed members of the class from unjust or unfair settlements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592–93 (3d Cir. 2010).

*In re Odyssey Contracting Corp.*, 944 F.3d 483, 489–90 (3d Cir. 2019).

The Third Circuit has articulated a set of nine "*Girsh* factors" that courts should consider when determining the fairness of a proposed settlement:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotations omitted); *see, e.g.*, *In re Johnson & Johnson Deriv. Litig.*, 900 F.Supp.2d 467, 479–85 (D.N.J. 2012) (reciting and applying the *Girsh* factors). "The settling parties bear the burden of proving that the *Girsh* factors weigh in favor of approval of the settlement." *In re Pet Food Prods.*, 629 F.3d at 350. "A district court's findings under the *Girsh* test are those of fact." *In re Nat'l Football League*, 821 F.3d at 437, *as amended* (May 2, 2016).

Since *Girsh*, the Third Circuit has held that, "because of a 'sea-change in the nature of class actions' after *Girsh* was decided thirty-five years ago, it may be helpful to expand the *Girsh* factors to include, when appropriate, the following non-exclusive factors":

[1] [T]he maturity of the underlying substantive issues ...; [2] the existence and probable outcome of claims by other classes and

>subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Pet Food Prods.*, 629 F.3d at 350 (quoting *In re Prudential Ins. Co.*, 148 F.3d at 323). "Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential." *In re Nat'l Football League Players*, 821 F.3d at 437 (internal quotations omitted). The *Girsh* and *Prudential* factors are well established law and their continued application in the class settlement context has been reaffirmed by the Third Circuit recently. *See In re Nat'l Football League Players*, 821 F.3d at 437.

At this preliminary approval stage, not all of the *Girsh* or *Prudential* factors apply since notice has not yet gone to the Class Members and they have not had an opportunity to respond. However, the Parties offer this response to the facts at this preliminary phase and reserve the right to supplement their responses at the final approval stage.

(1) The complexity, expense and likely duration of the litigation.

Because this action involves complex application of TILA to the Defendant's mini-loan product, the parties were required to research and apply issues not commonly addressed and review thousands of pages of discovery produced by the Defendant. The complexities of the issues before the Court are also self-evident by the cross motions for summary judgment pending before the Court. If this matter proceeded further, additional expense would have been incurred to prepare for and conduct trial and potentially post-trial appeals.

(2) The stage of the proceedings and the amount of discovery completed.

All necessary discovery had concluded and cross motions for summary judgment were pending. *See e.g.* ECF. 43 & 44.

(3) <u>The risks of establishing liability.</u>

As evidenced by the Parties' competing cross motions for summary judgment (*see e.g.* ECF. 43 & 44) liability remained at-risk. So, the risk of establishing liability was strong and remained at the time of settlement.

(4) <u>The risks of establishing damages.</u>

Statutory damages available under the TILA were at risk and it was entirely possible that far less than the sum obtained by the settlement would have been recovered—depending on the Defendant's net worth and the decision of the fact finder. Further, binding precedent and the Court's prior ruling, 2019 WL 161732, limited the Plaintiffs' ability to recover actual damages would certainly could have been addressed on appeal but would require the Third Circuit to reverse or modify is prior precedent which was risky for the Plaintiffs and Class members.

(5) <u>The risks of maintaining the class action through the trial.</u>

Proceeding to trial under the claims before the Court could have proved rewarding to Class Counsel for an award of reasonable attorney fees, but for the Plaintiffs and Class members who were until recently mostly hourly employees in the hospitality field, there was a very real risk that their individual recoveries would be far less than this settlement will obtain on their behalf. Further, the Settlement obtains certain relief for the Class Members while a trial has many uncertainties for all Parties.

(6) <u>The ability of the defendants to withstand a greater judgment.</u>

This was not really a factor in this settlement since the Defendant has a net-worth that exceeds the statutory damages available to the Class under TILA.

(7) <u>The range of reasonableness of the settlement fund in light of the best possible recovery.</u>

The class-wide settlement in this case will likely result in a sum in excess of one mini-loan borrowed by the Class members and far exceed the $35 fee which is at issue. It is possible that the Class members might have obtained a greater statutory damages award under TILA by proceeding to trial (or even a lower amount), but under the circumstances of this case and the current market conditions affecting the Class members, the result obtained is outstanding.

(8) <u>The range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.</u>

It was entirely possible that the Class Members would receive no recovery in this action. In light of that very real risk and the maximum possible recovery of statutory damages under the TILA, the reasonableness of this settlement fund is apparent. Further, but for this settlement, Class Members may not have known of the issues involved and their rights under the law.

(9) <u>The maturity of the underlying substantive issues.</u>

This settlement was reached after months of discovery and presentation of dispositive motions and after the Court's certification of the Class.

(10) <u>Whether class members are accorded the right to opt out of the settlement.</u>

After notice is sent to the Class Members, each will have the right to opt-out of the settlement if they so desire. Ex. 1, Agreement, at ¶¶ 17, 38.

(11) <u>Whether any provisions for attorneys' fees are reasonable.</u>

The Parties have agreed that Plaintiff's counsel may petition the Court for an award of reasonable attorney fees and costs incurred on behalf of the Class Members from the common fund created by the Agreement. Ex. 1, Agreement, at ¶ 29. Defendant retains the right to object

to that request and no agreement about what sum of award by the Court was ever discussed or agreed upon by the Parties. *Id.*

> (12) <u>Whether the procedure for processing individual claims under the settlement is fair and reasonable.</u>

The settlement agreement does not require the Class Members to submit any claim. After receiving notice of the settlement as approved by the Court, the Class Members who do not opt-out will receive, upon final approval of the Court, a pro-rata share of the common fund (less any attorney fees, incentive payment, and costs awarded to the Plaintiff's counsel and any costs of administration of the settlement). Any remaining sums disbursed but not cashed by the Class Members will go to a 501(c)(3) non-profit organization approved by the Court. Ex. 1, Agreement, at ¶ 39

### III. CONCLUSION

WHEREFORE, for the reasons set forth above, and pursuant to Fed. R. Civ. P. 23, the Parties respectfully request that the Court (i) amend its prior Order certifying the Class (ECF. 36) and (ii) preliminarily approve the proposed settlement by entering the proposed Preliminary Approval Order attached hereto, and for such other relief as this Court deems proper.

Dated: April 23, 2020

                              Respectfully submitted,

                              Respectfully submitted,

*/s/Robert P. Cocco*
Robert P. Cocco
Robert P. Cocco, P.C.
Attorney I.D. No. 61907
1500 Walnut St., Ste. 900
Philadelphia, PA  19102
(215) 351-0200
rcocco@rcn.com

*/s/ Phillip R. Robinson*
Phillip R. Robinson
(*Admitted Pro Hac Vice*)
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
(301) 448-1304
phillip@marylandconsumer.com

/s/ Scott C. Borison
Scott C. Borison
(*Admitted Pro Hac Vice*)
Legg Law Firm, LLP
1900 S. Norfolk St. Suite 350
San Mateo CA 94403
(301) 620-1016
(301) 620-1018 (fax)
borison@legglaw.com

                      *Attorneys for the Plaintiffs & Class*

***JOINED IN AND CONSENTED TO FOR SETTLEMENT PURPOSES ONLY***

On behalf of and with the express authority of Defendant Marriott Employees Federal Credit Union:

**LITCHFIELD CAVO, LLP**

<u>/s/ T, Justin Chapman (with permission)</u>
1515 Market Street, Suite 1220
Phildelphia, PA  19102
Phone (215) 557-0111
chapman@litchfieldcavo.com

*Counsel for the Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon all parties in this action when filed with the Court's ECF system.

*/s/ Robert P. Cocco*
Robert P. Cocco
