UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KATHERINE PAYNE**<br>**ARTHUR COATES**<br>　*Plaintiffs, individually and on behalf of other similarly situated persons*<br>v.<br><br>**MARRIOTT EMPLOYEES FEDERAL CREDIT UNION**<br>　*Defendant* | CIVIL ACTION<br>NO. 2:18-CV-04009-WB |

### MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT, AWARD OF INCENTIVE FEES, ADMINSTRATION COSTS AND ATTORNEY'S FEES AND SUPPORTING MEMORANDUM OF LAW

Plaintiffs, Katherine Payne and Arthur Coates ("Plaintiffs"), through counsel and pursuant to Fed. R. Civ. P. 23 to grant final approval of the Settlement Class. The Court previously certified a class in this action. (ECF 36). The parties later jointly moved for an order amending the class certification order to provide for a settlement class and also sought preliminary approval of the proposed settlement class. (ECF 64). The Court granted that motion. (ECF 70).

Here, Plaintiffs now move for final approval of the settlement. Plaintiffs also request an award of incentive fees for the Plaintiffs for their services as class representatives, payment of the administrative costs and attorney's fees.

In support of this motion, Plaintiffs respectfully say:

**I. INTRODUCTION**

    1. On September 18, 2018, Named Plaintiffs filed the above-captioned class action lawsuit asserting class claims against Defendant under the Truth in

Lending Act, 15 U.S.C.A. § 1601 *et seq.* ("TILA") alleging that Defendant MEFCU violated TILA by failing to make certain disclosures required by TILA and its implementing regulations in relation to its "mini-loan" product. Specifically, Named Plaintiffs claim they and the Class members were improperly:

   a. Charged a $35 application fee that should have been disclosed as a finance charge which rendered the disclosures provided inaccurate – the true annual percentage rate of the loan exceeded 45% but the disclosure provided stated the APR was 18%; and

   b. The TILA disclosures provided by MEFCU did not properly give notice of the security interests claimed by the Defendant in their deposit accounts and wages from their employer.

2. MEFCU moved to dismiss Plaintiffs' claims to which the Court granted the motion in part and denied it in part. *See e.g. Payne v. Marriott Employees Fed. Credit Union*, No. CV 18-4009, 2019 WL 161732 (E.D. Pa. Jan. 9, 2019).

3. After the Parties' initial discovery, Plaintiffs moved to certify a class of similar persons which was granted by the Court.  ECF. 36.

4. Following the remaining discovery, the Parties cross moved for summary judgment.  *See e.g.* ECF. 43 & 44 (and related responses, relies, and other motions). The Court subsequently denied the motions as moot (after the Parties reached the proposed settlement). (ECF 66).

5. During discovery and following the motions practice the Parties participated in two formal arms-length negotiations in settlement conferences before United States Magistrate Judge Richard A. Lloret and multiple informal communications between counsel for the Parties and Judge Lloret. As a result of these communications, the Parties entered into a Class Action Settlement Agreement (hereinafter referred to as the "Agreement"), which was previously submitted as ECF 64-1. The Settlement Agreement was modified by stipulation of the parties. (ECF 69).

6. Pursuant to Fed. R. Civ. P. 23(e), the Parties now seek final approval of the Agreement which resolves this Lawsuit pending before this Court. Specifically, the Plaintiffs request the Court enter the proposed Order of Final Approval of Class Action Settlement (hereinafter referred to as the "Final Approval Order") attached hereto.

## II. SUPPORTING MEMORANDUM OF LAW

The Plaintiffs submit the following memorandum in support of their motion to grant final approval of the Agreement, as modified by the parties' stipulation.

### A. THE SETTLEMENT

The Court granted and entered a Preliminary Approval Order. ECF. 70. The Plaintiffs incorporate the basis for those prior rulings from the papers and discovery already relied upon and before the Court. *See e.g.* ECF. 29 & 64 (including related attachments and papers thereto each filing).

The remaining significant terms of the settlement are set forth in the following sub-paragraphs.

### 1. Notice to Class Members

In the Preliminary Approval Order, the court directed that the Settlement Administrator to send notice to the class members. (ECF 70). The notice has been served as directed. *See* **Exhibits 1 & 2** Declarations of Settlement Administrator and engaged notice vendor. As of July 15, 2020, each of the 205 class members are deemed delivered. **Exhibit 2** at ¶¶ 4-6.

### 2. Exclusions and Objections.

The notice sent included information relating to timely objections or exclusions. At this time, the deadline for exclusions or objections has not passed. However, only one exclusion has been received. Plaintiffs will provide a supplement to this motion before the final fairness hearing.[1]

### 3. Settlement Consideration.

The settlement provides significant relief to the class for the claims asserted. *See* ECF. 64-1 at ¶¶ 28 and 33. The defendant is paying $215,000 to create a settlement common fund. The fund will also pay the fees associated with the action and the costs.

### 4. **The Settlement Satisfies the Requirements of Rule 23**

The Court previously found the class met all of the requirements of Rule 23 to be a class.  ECF. 36 & 70.

### 5.  **The Settlement is Fair, Adequate and Reasonable.**

A.  **Presumption of Reasonableness**.

An initial presumption of fairness arises in reviewing a class settlement when: "(1) the negotiations occurred at arms-length; (2) there was sufficient discovery; (3) the

---

[1] The deadline for Opt Outs is July 23, 2020 and the deadline for Objections is July 28, 2020.

proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016), as amended (May 2, 2016).

Each of these factors are present here. The settlement agreement was reached at arms-length after two mediation sessions before Magistrate Judge Lloret. The mediation followed significant motions practice and discovery conducted in the case. Counsel for each party was represented by experienced counsel. Plaintiffs' counsel submitted declarations setting forth their experience previously. ECF 29-3. Further, while the deadline for objections has not passed, there have been no objections filed to date and only one exclusion.

B. **The Girsh Factors**.

The Third Circuit in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) set forth factors for the Court to consider in determining whether a settlement meets the requirement of being fair, reasonable and adequate. Each of the factors are discussed below:

**(1) the complexity, expense and likely duration of the litigation;**

This not a garden variety type of case. The issues in this action fall under TILA which, as demonstrated from the motions practice record in this case and related case law, is complex since it entails interpretations that require a review of statutes, case law, regulations and regulatory interpretation of the law. In addition, the case had been pending for close to two years before the settlement was reached. It would likely continue for a significant duration at the trial court level and on appeal if the case had not been settled. This factor favors the settlement.

**(2) the reaction of the class to the settlement;**

As of this filing, there has been just a single opt-out. All other inquiries of the class members with Class Counsel have been overwhelmingly positive. So far, this factor weighs in favor.

**(3) the stage of the proceedings and the amount of discovery completed;**

There was sufficient discovery to permit Plaintiffs to seek class certification and each party to file competing summary judgment motions. This factor also weighs in favor.

**(4) the risks of establishing liability**;

The Court dismissed a portion of the claims at the motion to dismiss stage. While Plaintiffs are confident they would prevail on the remaining claims, there is a risk to prevailing on the remaining claims. This factor weighs in favor of the settlement.

**(5) the risks of establishing damages**;

The TILA provides for statutory damages and therefore establishing damages would not be a significant factor. However, the amount that may be awarded is not firm since this is a class action and under TILA and the amount for a class proceeding is limited by TILA and appears discretionary. 15 U.S.C.A. § 1640.

Here, it is anticipated that the proposed settlement, if given final approval by the Court, will provide each class member who has not timely excluded themselves an amount in excess of an average mini-loan (depending on the sum of costs, incentive payments, and attorney's fees awarded by the Court and incurred to carry-out the

settlement as discussed *infra*).[2]  Considering the TILA violations at issue here concerned in part an improper $35 application fee per mini-loan, the anticipated net recovery by the proposed settlement is an outstanding result.

**(6) the risks of maintaining the class action through the trial;**

Plaintiffs believe they would be able to maintain the class through trial and unlike many cases, the Plaintiffs' motion to certify a class was granted before the settlement class was sought. This factor is also neutral.

**(7) the ability of the defendants to withstand a greater judgment**;

It is possible that the Defendant may be in a position to withstand a greater judgment, but it is a double edge sword since it would also allow them to appeal any adverse ruling and prolonging any potential recovery for the Class members who generally would favor a recovery sooner rather than later.[3] This factor is neutral.

**(8) the range of reasonableness of the settlement fund in light of the best possible recovery;**

The potential range of damages places the recovery at a reasonable amount given the class size and the maximum recovery allowed under the class action provision under TILA. This factor favors the settlement.

**(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.**

---

[2] The Common Fund created by the proposed settlement equals $215,000.00. ECF. 64-1 at ¶ 28.  There are currently 204 class members.  Assuming the Court approves the incentive payments and attorney fees proposed *infra*, and accounting for the total anticipated costs of administration (about $6,689.), each class member's *pro rata* payment is anticipated to equal about $649.82.

[3] It should be noted that many of the class members we laid off shortly after this settlement was reached in light of COVID-19's impact on their employer.

As noted above, there are risks as to prevailing on liability, the amount of any award and the real possibility that any adverse judgment would be appealed by the Defendant. This factor favors the settlement.

Since *Girsh*, the Third Circuit has also held that, "because of a 'sea-change in the nature of class actions' after *Girsh* was decided thirty-five years ago, it may be helpful to expand the *Girsh* factors to include, when appropriate, the following non-exclusive factors":

> [1] [T]he maturity of the underlying substantive issues ...; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Pet Food Prods.*, 629 F.3d at 350 (quoting *In re Prudential Ins. Co.*, 148 F.3d at 323). "Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential." *NFL Players*, 821 F.3d at 437 (internal quotations omitted). The *Girsh* and *Prudential* factors are well established law and their continued application in the class settlement context has been reaffirmed by the Third Circuit [recently]. See In re Nat'l Football League Players, 821 F.3d at 437." *In re Ocean Power Technologies, Inc.*, 2016 WL 6778218, at *12 (D.N.J., 2016).

These factors also favor the settlement.

    (1)    <u>The maturity of the underlying substantive issues.</u>

This settlement was reached after months of discovery and presentation of dispositive motions and after the Court's certification of the Class.

(2) Whether class members are accorded the right to opt out of the settlement.

The notice sent to the Class Members gave each the right to opt-out of the settlement if they so desire. As of this filing, just one class member has exercised that right.

(3) Whether any provisions for attorneys' fees are reasonable.

The Parties agreed that Plaintiffs' counsel may petition the Court for an award of reasonable attorney fees and costs incurred on behalf of the Class Members from the common fund created by the Agreement. Defendant retains the right to object to that request. In addition, no agreement about what sum of award by the Court was ever discussed or agreed upon by the Parties.

Plaintiffs' request for attorney fees, discussed *infra*, is within the range of fees awarded by courts in similar actions.

(4) Whether the procedure for processing individual claims under the settlement is fair and reasonable.

The Class Members do not need to submit any claim. The Class Members who do not opt-out will receive, upon final approval of the Court, a pro-rata share of the common fund (less any attorney fees, incentive payment, and costs awarded to the Plaintiff's counsel and any costs of administration of the settlement). Any remaining sums disbursed but not cashed by the Class Members, if any, will go to a 501(c)(3) non-profit organization(s) approved by the Court.

The Plaintiff has proposed a *cy pres* recipient for the Court to consider. ECF. 67. The Defendant has not done so.[4]

### 7. Class Representative Incentive Payments and Settlements.

The Plaintiffs seek a Court awarded incentive payment for their service to the Class in this action by participating in discovery, attending a mediation session under the Court's supervision, maintaining contact with Class Counsel, and being prepared to attend and participate in any Court proceedings (both plaintiffs participated in the mediation process with Magistrate Judge Lloret on behalf of the class).

The Plaintiffs seek the sum of $5,000 each. This falls on the low end of incentive awards in other cases. *See e.g.*, *Cikra v. Lami Products LLC.*, 2:15–cv–06166–WB (awarding $2,500 to $12,500 to the class representatives).

### 7. Attorneys' Fees, (Non-Notice) Costs, and Expenses.

Pursuant to the Agreement, Class Counsel is entitled to petition the Court for an award of reasonable attorney's fees and costs to Class Counsel, related to this action, including reasonable time spent handling communications from Class Members. ECF. 61-1 at ¶ 29. "The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund "in a manner that rewards counsel for success and penalizes it for failure." *Prudential*, 148 F.3d at 333 (internal quotations omitted). *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 300 (3d Cir. 2005)

---

[4] Given the success rate in the mailing of the Class Notice, Plaintiffs are and the Settlement Administrator anticipate that 100% of the class members will receive their payments and no *cy pres* may be left to distribute.

The Plaintiffs request and seek an award of thirty-five percent (35%) of the common fund—i.e. $75,250—as attorney fees. This amount is common for contingency fees in similar class matters. "While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund. *Stevens v. SEI Investments Co.*, No. CV 18-4205, 2020 WL 996418, at *12 (E.D. Pa. Feb. 28, 2020)(citing to *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995)). *Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 340 (E.D. Pa. 2007)(approving request for 35% toward attorney fees from a common fund settlement); *Rouse v. Comcast Corp.*, No. CIV.A. 14-1115, 2015 WL 1725721, at *12 (E.D. Pa. Apr. 15, 2015)(same); Galt v. Eagleville Hosp., 310 F. Supp. 3d 483, 497 (E.D. Pa. 2018)(same).

The requested amount by Plaintiffs for attorney fees also falls within the range of percentages awarded in consumer cases. The factors to be considered include: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d. Cir. 2000).

**(1) the size of the fund created and the number of persons benefitted;**

The size of the fund equals $215,000 for the benefit of 205 potential class members.[5]

The net amount that is anticipated to be recovered by each class member, depending of the Court's award of attorney fees, incentive payments, and costs, is anticipated to exceed the average amount of a mini-loan made to the class members by the Defendant. *See* FN 2 *supra*.  It should also be noted that the claim was based, in part, on a substantially smaller  fee in connection with the mini loans equal to $35.00.  The anticipated net recovery for each class member substantially exceeds this amount.

**(2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;**

To date, there have been no objections.

**(3) the skill and efficiency of the attorneys involved;**

The attorneys submit that they have shown their skills and efficiency throughout this litigation in the papers and advocacy before the Court and their communications with the Plaintiffs and class members.

**(4) the complexity and duration of the litigation;**

The litigation lasted approximately 18 months before a settlement was reached. There was substantial motion practice including a motion to dismiss, motion for class certification, motions to strike, and motions for summary judgment.

**(5) the risk of nonpayment;**

Counsel proceeded on a 40% contingency basis in their agreements with the class representatives. There was a significant risk of nonpayment as discussed s*upra*.

---

[5]  One exclusion has been received as of this filing reducing the class to 204.

**(6) the amount of time devoted to the case by plaintiffs' counsel;**

The plaintiffs' attorneys and their paralegal support combined spent in excess of 140 hours in representing the plaintiffs and the proposed class.

**(7) the awards in similar cases.**

The Third Circuit affirmed an award of similar fees in a consumer case previously. *See Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 883 (3d Cir. 2016). The Plaintiffs' counsel have received a number of attorney fee awards in excess of the sum sought in this case in other districts. *See e.g., Castillo v. Nagle & Zaller*, Case No. 12-02338 –WDQ (D.Md.) (40%); *Gardner v. MCTFCU*, Case No. 10-02781-BPG (40%) (D.Md.); *Bradshaw v. Hilco Receivables, LLC*., 10-0113-RDB, (D.Md.)(40%); *Veiga, et al., v. Suntrust Bank*, 09-2815-PGW, (D.Md.) (40%); *Baker v. Sunshine Financial Group, LLC*., 11-02028-PWG (D.Md.)( 40%); *Tyeryar v. Main St. Acquisition Corp.*, 11-00250-CCB (D. Md.)(40%). Some of these other cases involved substantially larger funds than the fund before this Court in this action.

Plaintiffs' counsel have also incurred expenses on behalf of the Class members which were necessary to pursue their claims. These include:

| | |
|---|---|
| Filing Fee | $400.00 |
| Copying and Delivery Fees | $97.72 |
| **Total** | **$497.72**[6] |

Plaintiffs do not seek recovery for transportation costs to Court proceedings and other matters related to the case. As demonstrated above, Plaintiffs' costs were not

---

[6] Plaintiffs' counsel also incurred other fees and expenses in the litigation (i.e. *pro hoc vice* fees and transportation costs related to court proceedings, research costs, etc.) which are valuable and incurred on behalf of the class members but Plaintiffs' counsel has agreed to absorb in lieu of diminishing the common fund further.

incurred unless necessary based on the issues developed through discovery. Plaintiffs just as easily could have expended additional resources but to what end give the Defendants' admissions in discovery.

Based on the foregoing, Plaintiffs request that the Court award $75,250 (or 35% of the common fund) and $497.72 for costs incurred in the litigation (from the common fund on behalf of the Class.

### III. CONCLUSION

WHEREFORE, for the reasons set forth above, and pursuant to Fed. R. Civ. P. 23, the Plaintiffs respectfully request that the Court (i) certify the Settlement Class and (ii) finally approve the proposed settlement, award incentive fees to the Plaintiffs; award attorney fees and designate the *cy pres* recipients for any unclaimed funds and for such other relief as this Court deems proper. A proposed order is submitted with this motion.

Dated: July 20, 2020

                        Respectfully submitted,

                        */s/Robert P. Cocco*
                        Robert P. Cocco
                        Robert P. Cocco, P.C.
                        Attorney I.D. No. 61907
                        1500 Walnut St., Ste. 900
                        Philadelphia, PA  19102
                        (215) 351-0200
                        rcocco@rcn.com

                        */s/ Phillip R. Robinson (with permission)*
                        Phillip R. Robinson
                        (*Admitted Pro Hac Vice*)
                        Consumer Law Center LLC
                        8737 Colesville Road, Suite 308
                        Silver Spring, MD 20910
                        (301) 448-1304
                        phillip@marylandconsumer.com

                        /s/ Scott C. Borison (*with permission*)
                        Scott C. Borison
                        (*Admitted Pro Hac Vice*)
                        Borison Firm, LLC.
                        1900 S. Norfolk St. Suite 350
                        San Mateo CA 94403
                        (301) 620-1016
                        (301) 620-1018 (fax)
                        scott@borisonfirm.com

                        *Attorneys for the Plaintiffs & Class*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all parties in this action when filed with the Court's ECF system.

*/s/ Robert P. Cocco*
Robert P. Cocco
